## In re LASH.

(Supreme Court, Appellate Division, First Department. May 17, 1912.)

1. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—EVIDENCE—SUFFICIENCY.

Evidence in a disbarment proceeding *held* to support referee's finding that respondent converted to his own use a check received for his client in settlement of litigation.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. § 53.*]

2. ATTORNEY AND CLIENT (§ 44*)—DISBARMENT—ACTING IN PROFESSIONAL CAPACITY—WHAT CONSTITUTES.

An attorney conducting litigation who was taken sick, arranged with respondent, an attorney, to take charge of the matter for a share of the fee. An offer of settlement having been made, respondent saw the client, who authorized him to make the settlement, and executed the necessary papers. Respondent received in settlement a check to the order of the original attorney which he indorsed and converted the proceeds. *Held*, that in receiving the money, he was acting in a professional capacity as an attorney.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

3. ATTORNEY AND CLIENT (§ 58*)—SUSPENSION AND DISBARMENT—PUNISHMENT.

An attorney 28 years of age, and practicing for about 6 years, was found guilty of converting his client's money to his own use. This was the first charge of misconduct made against him, and he had borne a good character theretofore. *Held*, that he would not be disbarred, but merely suspended.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 76–78; Dec. Dig. § 58.*]

Original proceeding for the disbarment of Sidney C. Lash, an attorney, on charges filed by the Association of the Bar of the City of New York. Respondent suspended.

See, also, 144 App. Div. 931, 129 N. Y. Supp. 1131.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Einar Chrystie, of New York City, for petitioner.
Denis A. Spellissy, of New York City, for respondent.

INGRAHAM, P. J. [1] The respondent was a young man about 28 years of age admitted to practice in May, 1906. The charge which the referee sustained is that the respondent while acting as attorney for the Richards Manufacturing Company received a check for his client for $454.13 in settlement of a litigation in which the Richards Manufacturing Company was engaged, cashed the check, and converted the proceeds to his own use. It appears that the Richards Company had filed a mechanic's lien upon certain real property in the city of New York, and was represented in the proceedings to foreclose that lien by one Charles L. Bogle, an attorney at law. Bogle, being taken sick, made a copartnership arrangement with the respondent, by which the fees received were to be divided equally and then sailed for Europe. After he left, an offer was made to settle

the Richards Company's claim by the payment of $454.13, and, this offer coming to the knowledge of the respondent, he called upon a Mr. Hutchins, who was the manager of the Richards Company, submitted this offer to him, and told Mr. Hutchins that, if he accepted it, he would have the money in a few days. Mr. Hutchins finally accepted the offer, and authorized the respondent to make the settlement. The respondent then produced certain instruments which the Richards Company was required to execute, and they were so executed and returned to the respondent to carry out the settlement. The respondent did carry out the settlement, and received a check drawn to the order of Charles L. Bogle, attorney, for the amount in question. He took the check, indorsed Bogle's name to it by himself as attorney, collected the check and received the money, but did not pay it over to his client, nor did he notify his client of the receipt of the money, or that the settlement had been completed. Some two or three weeks afterwards, Hutchins, finding that the money had been paid, endeavored to find the respondent, but in the meantime Bogle had been dispossessed of the offices that had been occupied by himself and the respondent for nonpayment of rent, and the respondent had, so far as Hutchins could ascertain, disappeared. Hutchins communicated with the attorneys, who had paid the money, with the result that the check given to Bogle's order was returned to the bank that respondent had procured to cash it. In the meantime Hutchins presented these charges to the Grievance Committee of the Bar Association, and this proceeding was instituted.

The respondent's excuse for this proceeding is that after he got the check he procured it to be certified; that he then took the check down to a bank on Long Island, where he had established a new office, and got that bank to cash it and received the money; that he had called up Hutchins on the telephone to tell him of the receipt of the money several times, but Hutchins was not in, so he had not communicated to Hutchins the fact that he had received the check; that he collected the check in order to preserve the lien of Bogle for any fees to which he would be entitled from the company, and after collecting the money, as he had no bank account, he gave it to his brother to keep for him, supposing his brother to be a safe depositary, but that, after the check was returned, he demanded the return of the money from his brother, but did not receive it immediately; that his brother subsequently paid over $200 which he paid to the bank from which he had received it, and his brother subsequently paid him the balance, which he also returned to the bank. This appears to be after the charges were made before the Bar Association.

The respondent's story rests entirely upon his own uncorroborated evidence. He does not produce his brother or anybody else to corroborate him, nor does he produce Bogle to testify as to any authority conferred upon the respondent to indorse checks drawn to Bogle's order. The respondent's testimony is not at all convincing. It seems that Bogle had been an attorney for this corporation for some time, and no intimation had come from Bogle that to preserve his rights it was necessary that the client's money should be retained, and

not paid to it. The delivery of the money to the respondent's brother was an entirely improper use of the client's money. There would have been no difficulty in depositing it with the bank that had cashed the check and leaving it there if his only motive had been to protect Bogle's interest. But there is not the slightest suspicion that Bogle's interest required protection. There is no evidence that Bogle had really performed any services for the Richards Company for which he had not been paid, or that he had any lien on this fund or right to retain it. The whole story is evidently an afterthought to excuse a serious dereliction of duty. The referee is satisfied on the whole with Mr. Hutchins' testimony.

The respondent also claims that immediately after receiving the check he wrote a letter to Bogle, addressing it to "Gibraltar, England," stating the facts and requesting instructions, and produces what he says is a copy of that letter. But as to all of that he is entirely uncorroborated. His excuse for not notifying his client of the receipt of the check is also most unsatisfactory. He says he called Hutchins up on the telephone, but the mere fact that Hutchins was not in the office when he called him up would be no excuse for not notifying the company, his client, that he had received the money. He certainly could have written a letter or called at the office of the company himself. He had no difficulty in seeing Hutchins when he wished to get authority to settle so that he could get the money, but, as soon as he got the money in his possession, his interest in communicating with Hutchins suddenly ceased. According to his own story, he confined his efforts to notifying his client of the receipt of the money to calls on the telephone. The referee finds that the respondent was clearly guilty of unprofessional conduct, and with his conclusions we agree.

[2] The respondent makes the point that he was not acting in a professional capacity in receiving this money. But he went to the Richards Manufacturing Company as Bogle's partner, Bogle being the attorney for the company, and solicited and obtained the authority to make the settlement acting as the partner of the attorney and as a lawyer. It is quite clear that this was a purely professional employment, and that he received power to collect this money purely because of his being an attorney at law and a partner of the lawyer for the Richards Company in the action.

[3] The respondent having been found guilty of serious professional misconduct, the question is then presented as to what punishment should be imposed. The respondent is 28 years of age, and has been practicing as attorney about 6 years. So far as appears, he has heretofore borne a good character, and this is the first charge that has been made against him. Under the circumstances, we think in this case we are justified in not inflicting the extreme penalty of disbarment, but the respondent should be suspended from practice for two years, and until the further order of the court. All concur.